DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### AT JUNE TERM, 1860.

---

## ADAMS AND TRAPHAGEN v. WILLIAM B. ROSS.*

1. A deed made by A. B., in consideration of love and affection and of one dollar, to C. D., wife of E. F., in which the said A. B. doth grant, bargain, sell, alien, remise, release, and confirm certain real estate to the said C. D., during her natural life, and at her death to her children which may be begotten of her present husband: to have and to hold the said premises unto the said C. D. for and during her natural life, and at her death to her children which may be begotten of her present husband, E. F., and containing covenants of seizin and general warranty, which are made by the grantor for herself and her heirs with the grantee and her heirs and assigns, conveyed to the grantee an estate for life only, with a remainder vested in G. H., a child of the said C. D., for life, subject to open, and let in afterborn children to the same estate.

2. The estate created was not an estate in fee or in fee tail, there being in the grant no words of inheritance or procreation.

3. The covenants warranting the premises to C. D. and her heirs did not enlarge the estate, nor pass by estoppel a greater estate than that expressly conveyed.

4. A warranty attaches only to the estate granted, or purporting to be

---

* This case should have appeared in the last volume of the Law Reports, but the opinion was not received in time for publication by the late reporter.

granted.   If it be a life estate, the covenantor warrants nothing more;
the conveyance being the principal, the covenant the incident.

5.  In the construction of a deed, the question is, not what estate did the
grantor intend to pass, but what estate did he pass by proper and apt
words.   No expression of intent, no amount of recital showing the in-
tention, will supply the omission.

6.  A mortgage made after the conveyance, and while the said C. D. was
a minor, created no valid charge on the estate against the said C. D.

7.  The grant made to C. D. was within the provisions of an act for the
better securing the property of married women, passed March 25th,
1852, the deed being subsequent to the act.

8.  The husband not entitled to curtesy in the premises on surviving his
wife, the grantee.

Error to the Supreme Court.

On the 9th September, 1854, Anna V. Traphagen con-
veyed, by deed, to Catharine Ann V. B. Adams, wife of
Alonzo W. Adams, certain lots and real estate, situate in
Jersey City, for and in consideration of natural love and
affection and of one dollar paid.   The terms used in the
deed were, " grant, bargain, sell, alien, remise, and release
and confirm, unto Catharine Ann V. B. Adams, wife of
Alonzo W. Adams, all that, &c., situate, &c., for and during
the natural life of the said Catharine, and at her death to her
children which may be begotten of her present husband,
Alonzo W. Adams."

The deed contained covenants of seizin, for quiet enjoy-
ment, against encumbrances, for further assurance and of
warranty, which covenants were made by the grantor, for
herself and her heirs, with the grantee, her heirs and assigns.

When the deed was made, the said Catharine Ann V. B.
Adams was a minor; and on the 13th day of October, being
still a minor, she joined her husband in a mortgage on the
premises to William B. Ross, to secure the payment of the
sum of $6000.

A part of the premises was afterwards, under the au-
thority of law, condemned for the benefit of the Erie Rail-
way Company, the assessed value of which, being $3061,
was brought into the Supreme Court for distribution among

the parties, according to their respective rights, the money representing the whole value of the land taken.

The parties interested were heard before the court, in June term, 1858, on an application of Ross, the mortgagee, to be paid his mortgage out of the money in court.

The main question was the construction to be given to the deed made by Anna V. Traphagen, to Catharine Ann V. B. Adams, on the 9th September, 1854. After full argument of that question, and all others involved in the application, the court held that the estate granted by the deed was an estate in fee tail in Catharine Ann V. B. Adams and the heirs of her body; that her husband, Alonzo W. Adams, was tenant by the curtesy initiate; that the mortgage to William B. Ross on the interest of Mrs. Adams was void as to her, but was a lien upon the estate of her husband, he surviving her. See *Ross* v. *Adams*, 4 *Dutcher* 160, for the opinion of the court.

An order was made conforming to these views of the court, and thereupon a writ of error was brought by Ross and Traphagen to remove the order into this court for revision.

The cause was argued at February term, 1860.

For the plaintiff in error, *A. O. Zabriskie.*

For the defendant, *J. P. Bradley.*

At June term, 1860, the following opinion was read by

WHELPLEY, J. This writ of error brings up for review the judgment of the Supreme Court, giving a construction to a deed, dated the 9th of September, 1854, between Anna V. Traphagen, of the first part, and Catharine Ann V. B. Adams, wife of Alonzo Whitney Adams, of the second part, by which the grantor, in consideration of natural love and affection and of one dollar, conveyed to the grantee the premises in the deed described. The operative words are grant, bargain, sell, alien, remise, release, convey, and con-

Adams v. Ross.

firm unto the said party of the second part, for and during her natural life, and at her death to her children which may be begotten of her present husband : to have and to hold the above described premises unto the said party of the second part for and during her natural life, and at her death to her children which may be begotten of her present husband, Alonzo W. Adams.

The deed contains covenants of seizin, for quiet enjoyment, against encumbrances, for further assurance and of warranty.

These covenants are made by the grantor for herself and her heirs with the party of the second part, her heirs and assigns.

Mrs. Adams, at the date of the conveyance to her, was a minor. On the 12th October, 1855, she, with her husband, executed a mortgage to secure the payment of $6000, in one year from date, upon the premises conveyed to her. She was then nineteen. The mortgage was to Ross, the applicant in the Supreme Court.

The Erie Railway Company, under the provisions of an act of the legislature, took a part of the land in question, and hold it in fee simple. The value of the land taken has been ascertained at $3061; that is now in the Supreme Court, to be awarded to the parties entitled to it, and who they are must depend upon the true construction of the deed.

What, then, are the rights of Mrs. Adams, her husband and children, one having been born of the marriage since the conveyance; and what, if any, are the rights of Ross, the mortgagee, to the money in court.

The Supreme Court held, that the estate granted by the deed was an estate in fee tail special in Catharine Adams and the heirs of her body by her present husband; that her husband was entitled to curtesy; that the mortgage to Ross on the interest of Mrs. Adams was void as to her, but was a lien upon the estate of her husband, in case he survived her.

This decision was reached by interpreting the word "children," in the deed, as equivalent to "heirs," calling in the

covenants in aid of that interpretation, as throwing light upon what the court called the intention of the grantor.

The Supreme Court was right in holding the first estate conveyed to Mrs. Adams, not a fee simple; the express limitation of the estate to her during life, and after her death to her children, forbade any other conclusion. The covenant, warranting the land to her and her heirs general, cannot enlarge the estate, nor pass by estoppel a greater estate than that expressly conveyed. A party cannot be estopped by a deed, or the covenants contained in it, from setting up that a fee simple did not pass, when the deed expressly shows on its face exactly what estate did pass, and that it was less than a fee. *Rawle on Cov. for Title* 420; *Blanchard* v. *Brook,* 12 *Pick.* 67; 2 *Co. Lit.* 385, *b.*

Lord Coke expressly says: but a warranty of itself cannot enlarge an estate; as if the lessor by deed release to his lessee *for life,* and warrant the land to the lessee and his heirs; yet doth not this enlarge his estate.

Justice Vredenburgh, in his opinion, admits this to be law. He says, although the covenants cannot be used to enlarge the estate, yet they may be used to show in what sense the words in the conveying part of the deed were used. What is that but enlarging what would otherwise be their meaning? If without explanation they are insufficient to pass the estate, does not the explanation enlarge their operation?

The learned judge, in his elaborate opinion, says: from these covenants, it is demonstrated that, by the terms children by her present husband, the grantor intended the heirs of her body by her present husband. It follows, from this argument, that although the conveying part of the deed may not contain sufficient to convey the estate as a fee simple, for example, yet that if the covenants show an intent to pass a fee simple, it will pass.

The argument is, that the words of conveyance and covenant must be construed together. If the covenants look to the larger estate, that will pass upon the intent indicated. Children are said to be equivalent to heirs, because she war-

ranted to her heirs; and the heirs are said to be not heirs general, because she called them children.

The inconsistency between the conveyance and covenant shows mistake in the one or the other. The safest rule of construction is that propounded by the Supreme Court; that the quantity of the estate conveyed must depend upon the operative words of conveyance, and not upon the covenants defending the quantity of estate conveyed.

Starting with that premise, it seems difficult, nay impossible, to reach the conclusion, that the covenants are to be looked to in the interpretation of the conveyance, as such.

The covenants only attach to the estate granted, or purporting to be granted. If a life estate only be expressly conveyed, the covenantor warrants nothing more. The conveyance is the principal, the covenant the incident. If they do not expressly enlarge the estate passed by the operative words of the deed, I cannot perceive upon what sound principle of construction they can have that effect indirectly by throwing light on the intention of the grantor. In the construction of a deed of conveyance the question is, not what estate did the grantor intend to pass, but what did he pass by apt and proper words. If he has failed to use the proper words, no expression of intent, no amount of recital, showing the intention, will supply the omission, although it may preserve the rights of the party under the covenant for further assurance or in equity upon a bill to reform the deed.

The object of the covenants of a deed is to defend the estate passed, not to enlarge or narrow it. To adopt, as a settled rule of interpretation, that deeds are to be construed like wills, according to the presumed intent of the parties making them, to be deduced from an examination of the whole instrument, would be dangerous, and, in my judgment, in the last degree inexpedient. It is far better to adhere to the rigid rules established and firmly settled for centuries, than to open so wide a door for litigation, and render uncertain the titles to lands. The experience of courts in the construction of wills, the difficulty in getting at the real in-

tent of the party, where imperfectly expressed, or where he had none; the doubt which always exists in such cases, whether the court has spelt out what the party meant, all combine to show the importance of adhering to the rule, that the grantor of a deed must express his intent by the use of the necessary words of conveyances, as they have been settled long ago by judicial decision and the writings of the sages of the law. Upon this point, it is not safe to yield an inch; if that is done, the rule is effectually broken down. Where shall we stop if we start here?

Littleton says: tenant in fee simple is he which hath lands or tenements to hold to him and his heirs for ever. For if a man would purchase lands or tenements in fee simple, it behooveth him to have these words in his purchase: "to have and hold to him and his heirs." For these words, "his heirs," make the estate of inheritance. For if a man purchase lands by these words, "to have and to hold to him for ever," or by these words, "to have and to hold to him and his assigns for ever," in these two cases he hath but an estate for life, for that there lack these words, "his heirs," which words only make an estate of inheritance in all feoffments and grants.

"These words, ' his heires,' doe not only extend to his immediate heires, but to his heires remote and most remote, born and to be born, *sub quibus vocabulis 'hæredibus suis' omnes hæredes, propinqui comprehenduntur, et remoti, nati et nascituri*, and *hæredum appellatione veniunt, hæredes hæredum in infinitum*. And the reason wherefore the law is so precise to prescribe certaine words to create an estate of inheritance, is for avoiding of uncertainty, the mother of contention and confusion." *Co. Lit.*, vol 1, 1 *a*, 8 *b;* 1 *Shep. Touch.* 101; *Com. Dig., tit. Estate A*, 2; *Preston on Est.* 1, 2, 4, 5; 4 *Cruise's Dig., tit.* 32, c. 21, c. 1.

There are but two or three exceptions to this rule. The cases of sole and aggregate corporations, and where words of reference are used "as fully as he enfeoffed me." A gift

in frank marriage, &c., which are to be found stated in the authorities already cited.

These exceptions create no confusion; they are as clearly defined and limited as the rule itself.

The word " heirs " is as necessary in the creation of an estate tail as a fee simple. 1 *Co. Lit.* 20, *a ;* 4 *Cruise's Dig., tit.* 32, *c.* 22, § 11 ; 4 *Kent's Com.* 6 ; 2 *Bl. Com.* 114.

This author sets this doctrine in clear light. He says: As the word heirs is necessary to create a fee, so, in further limitation of the strictness of feodal donation, the word body, or some other word of procreation, is necessary to make it a fee tail. If, therefore, the words of inheritance or words of procreation be omitted, albeit the other words are inserted in the grant, this will not make an estate tail, as if the grant be to a man, and *his issue* of her body, to a man and *his seed* to a man and *his children* or *offspring*, all these are only estates for life, there wanting the words of inheritance.

The rule in Shelley's case, that when the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited either immediately or mediately to his heirs in fee or in tail, that always in such cases the word heirs are words of limitation, and not of purchase. 1 *Rep.* 93 ;* 4 *Cruise's Dig., c.* 23, § 3, *tit.* 32, requires the use of the word heirs to bring it in operation.

No circumlocution has been ever held sufficient. It is believed no case can be found where this rule has been held to apply, unless the word heirs has been used in the second limitation.

Neither the researches of the learned judge who delivered the opinion of the Supreme Court, nor those of the very diligent counsel who argued the case here, have produced a case decided in England or in any state of this Union abiding by the common law, where, in a conveyance by deed, the word children has been held to be equivalent to heirs. That this has been determined in regard to wills is freely conceded, but that does not answer the requisition. The

* *Shelley's Case.*

reasoning of the Supreme Court is, to my mind, entirely un-satisfactory. In the administration of the law of real estate, I prefer to stand *super antiquas vias, stare decisis;* to maintain the great rules of property, to adopt no new dogma, however convenient it may seem to be. The refined course of reasoning adopted in the face of so great a weight of authority rather shows what the law might have been, than what it is.

I am utterly unprepared to overturn the common law, as understood by Littleton, Coke, Shepherd, Cruise, Blackstone, Kent, and all the judges who have administered it for three centuries, and to adopt the dogma, that intention, not expression, is hereafter to be the guide in the construction of deeds. That would be as unwarrantable as dangerous.

Under this deed, Mrs. Adams took an estate for life, which was not enlarged by the subsequent limitation to a fee tail. The remainder vested in Anna Adams, the child of the marriage, for life, subject to open and let in afterborn children to the same estate.

The deed operated as a covenant to stand seized. The proper and technical words of such a conveyance are, stand seized to the use of, &c.; but any other words will have the same effect, if it appear to have been the intention of the parties to use them for that purpose. The words bargain and sell, give, grant, and confirm, have been allowed so to operate. 4 *Cruise, tit.* 32, *c.* 10, § 1, 2.

By such a covenant, an estate may be limited to a person not *in esse,* if within the considerations of blood or marriage. *Fearne on Rem.* 288; 1 *Rep.* 154, *a;* 1 *Preston on Est.* 172, 176; 4 *T. Rep.* 39, *Doe* v. *Martin.*

This deed, on the face of it, expresses the considerations of natural love and affection, as well as the money consideration of one dollar.

It follows, from these considerations, that Adams is not entitled to curtesy in the lands on surviving his wife. The mortgage to Ross created no valid charge on the estate against Mrs. Adams, she being a minor when it was executed.

Mrs. Adams' interest in the land was subject to the pro-visions of the act for the better securing the property of married women, passed March 25th, 1852; the deed to her was after this act passed.

This was clearly a gift or grant, within the meaning of the act. The legislature did not intend to limit the benefits of the act to property conveyed by a deed operating as a gift or grant; all the ordinary modes of acquiring property by deed were intended by the use of the terms gift, grant. The reasoning of Justice Vredenburgh upon this point is conclusive. Upon the determination of the respective life estates, the land reverts to Miss Traphagen.

The judgment of the Supreme Court must be reversed. The money in court must be invested for the benefit of Mrs. Adams for life, and after her death for the benefit of the surviving children of the marriage, in equal shares, during their respective lives, and at their deaths respectively, their several shares must be paid to Miss Traphagen, or if she be then dead, to her heirs or devisees.

Judges COMBS, GREEN, RISLEY, VAN DYKE, WOOD, COR-NELISON, HAINES, and SWAIN concurred in reversing the order of the Supreme Court.

*For affirming*—None

Whereupon the following order or judgment was entered :
" This cause having been argued at the last term of this court, by the counsel of both parties, upon the reasons assigned for reversal, and the court having inspected the record and proceedings, and duly considered the same, and being of opinion that the deed executed by Anna V. Traphagen to Catharine Ann V. B. Adams for the lands out of which the sum paid into court arose, conveyed to the said Catharine Ann V. B. Adams an estate for life only, and that her husband, Alonzo W. Adams, is not entitled to any curtesy or any other estate therein ; and that, after the death of the

said Catharine Ann V. B. Adams the same would go to the children begotten of her body by her husband, Alonzo W. Adams, equally to be divided, if more than one, for the life of each of said children respectively, and that the reversion thereof remains in the said Anna V. Traphagen : it is ordered, adjudged, and decreed, that the judgment of the said Supreme Court be reversed, set aside, and for nothing holden ; and that the record be remitted to the Supreme Court, with directions to cause the sum paid into court to be invested under the control and direction of said court, and that the interest thereof, during the life of the said Catharine Ann V. B. Adams, be paid to her for her separate use, and at her death be paid to her children begotten of her by her husband, Alonzo W. Adams, in equal shares, if more than one, for their respective lives, and at the death of such children, respectively, the principal sum be paid to the said Anna V. Traphagen. On motion of A. O. Zabriskie, of counsel with plaintiffs in error."

CITED in *Black* v. *Delaware and Raritan Canal Co.*, 7 *C. E. Green* 418; *Lounsberry* v. *Locander*, 10 *C. E. Green* 558.